Oral arguments not to exceed 15 minutes per side. Mr. Douglas L. McSwain for the appellants. Good morning, your honors. Good morning, counsel for Appalachia. I'm Doug McSwain. I'm counsel for the appellants in this case. I'd like to reserve 5 minutes for rebuttal. May it please the court. Certified classes of foster children and foster caregivers bring this court decided D.O.V. glistened, the Kentucky Cabinet for Health and Family Services started a new policy of denying foster care maintenance payments to children removed from their homes and placed by court order with a relative or fictive kin caregiver. This new policy was that foster care maintenance was payable only to children in cabinet custody. This policy has created absurd disparity. Several children in this appeal were removed from the same abusive home as their siblings and some of those siblings were placed by court into the custody of a cabinet approved caregiver while their other siblings were ordered into cabinet custody and the cabinet then turned around and placed them with the same caregiver. I'm curious about something that you just alluded to. I had the impression reading this material perhaps incorrectly that the cabinet hadn't previously paid these benefits to people in a situation like this. You seem to be saying the opposite, that they used to and then after glisten they changed. Which is it? They were not paying relatives at the time of glisten, that is correct. What they did after the glisten decision came down was they created a policy that went into effect in the summer after it became a final decision. That policy got written into their regulations. That policy didn't change what they had been doing. It did. It basically said, okay, we're going to draw a cabinet custody distinction and still continue to refuse relatives or fictive kin. I thought you said at the beginning of my question to you that they previously weren't paying these benefits. It was not a consistent policy prior to that time and clearly in DOV glisten they were refusing to give it. They really hadn't used the cabinet custody as a tool to implement their policy of denying relatives. It happened in the facts of glisten that they did in fact do that. What their policy was, was not drawn as a clear line except that it was prejudicial against relatives. Then when glisten happened, they seized upon that decision and tried to draw a line at cabinet custody and continue to deny these relatives or fictive kin caregivers. I'm with you on custody is not in the statute, but responsibility is. We have to determine what responsibility means. Why do you think the facts of what the cabinet does makes them responsible for the placement when it's undisputed that the placement is made by the court? First off, what is the legal test? What is responsibility? Secondly, why do your facts meet that legal test? Unfortunately, the statute does not define what responsibility for placement and care. It is clear that the statute does not define what responsibility is, but the statute uses the test of responsibility for placement and care or actually that the children must be the responsibility of the and then it's got one, two, and three afterwards in 672A2B. One is the state agency approved as the state agency under the state plan or two, a public agency under contract with the state agency, some other public agency, or three, an Indian child welfare organization. Those three are the statutory criteria. That is the purpose of why it's included. It has to be one of those three for eligibility. The trial court erred by seizing upon the number one and saying that that placement and care responsibility was not the state agency's because it doesn't have the power under state law to actually make placements once a juvenile court judge has placed a child with a specific relative or fictive kin caregiver. The judge seized upon that and he said that means they don't have placement and care responsibility, but that's not the same thing. That is a question of legal authority under state law and this is a... Go back to Judge Murphy's question. When the judge makes the decision and the judge makes the decision, what are the facts? What does the cabinet do? My understanding from reading the depot and looking at some of... There's certainly some advice, recommendation, there's a role for sure. Is that placement responsibility? That is what the federal law means. That is precisely what the federal law means. Why shouldn't we take responsibility and mean like duty or obligation and there wouldn't it be... Because the state has a state plan and it assigns to the state agency that it will do all of these various functions, including identifying appropriate caregivers, making appropriate least restrictive recommendations, least restrictive on the child, recommendations as to placement, all of which happens when the court makes that order to place the child with a relative or... Does the plan only apply to eligible children? So the plan would by definition under their view not even be applicable? The plan applies across the board. That's why they are even allowed to participate. Then we take the federal statutory requirements and the question is, are they assigned the responsibility for placement and care under the plan? Clearly they are. We wouldn't be participants in the foster care maintenance program if they weren't assigned that plan. They're not giving it to another public agency under contract in these cases and they're not giving it to an Indian child welfare. They have got that responsibility by virtue of the plan assigning it to them and it's baked into the plan. When the federal government approved the plan, was Kentucky paying these benefits to the children that you're suing on behalf of? Yes. I think right at the time it looked like from the federal government's review of the plan it looked like they were going to do it right. And the plan says that... You're just not answering my question. I'm sorry. My question is, if you know, did the government know whether Kentucky was or was not making these payments? I don't know if the government knows. And the obvious reason I'm asking that question is if the government knew that that's how Kentucky was interpreting the federal law and they still approve the plan, then it seems to me you've got a harder case. Your Honor, I don't know whether they knew that Kentucky was going to try to start applying this limitation on their authority with respect to a child placed directly with a caregiver. I guess what you're saying is, what you say is the change Kentucky made all came after the plan was submitted and approved. And there hasn't been a new plan submitted and approved to reflect the current situation. Correct. Is that correct? That's correct. Okay. Got it. Thank you. The plan has been there for years. There's tweaks in the plans over the years, but nothing of this nature. And the plan references the state laws, including primarily 620.1401C and 620.090 of the Kentucky statutes. It references those and the pertinent regulations that go with it by the cabinet. And it says the court will make a placement either to a relative or a fictive kin or to the cabinet. And it is to prefer, the court is to prefer relatives, just as federal law requires, just as the Gleason case holds. When a petition is brought, is the cabinet always involved no matter who brings the proceeding? The cabinet doesn't have to bring the petition, but the cabinet will always become involved if somebody else brings it, yes. Somebody informs the cabinet that this is going on. The cabinet, I think, actually has to be served. Okay. And at that point, there's this involvement for sure with the placement. Correct. Is there some statutory... When you say they're responsible for the placement, is there some law or is there some duty that says they have to ensure that the court does something in a timely manner or they have to... What would assign them that responsibility? It's actually under the federal law that certain things have to happen within certain time limits and the courts end up being the ones that enforce it and make sure the cabinet has appropriately carried out its obligations in a timely fashion. Why isn't the court the one doing it then? That's what I'm... I don't understand. As a practical matter, the courts are always involved. That's understood in the Child Welfare Act. You cannot separate a child from his or her parents without court involvement. Their argument is, well, the court says, okay, the cabinet, you have custody or simply places the child someplace else. That line to me that ultimately, though, the court is making the decision. The court always makes the decision. When the assignment is made, when the custody goes to the cabinet, then they, in turn, make the next placement. Is that right? They still have to come back to court and tell the court about it and inform it. That's in 620.130 subsection 2. They have to keep the court informed, although they don't have to answer to the court. Okay, so the court doesn't have a role in that second order placement. Is that right? I mean, you're saying they have to inform the court, but can the court say, no, something else? Obviously the court can't. They're checking up on the progress and treatment of the child at all times. They are always overseeing the proper performance of what the cabinet is doing. The cabinet has the unilateral authority under state law to move them when it's in their custody, but the cabinet also has the obligation to keep the court informed, to give case progress reports, to constantly let the court know, and the court can order something differently. So how does this help your argument? Because you're telling us that even when the custody is given to the cabinet, if the cabinet's then going to pass off custody to somebody else, they still are overseen by the court. I mean, it just comes back to it seems like the court is even playing perhaps a greater role than I would have thought when I read the briefs. Because, Your Honor, the statute assigns the responsibility, the state plan assigns the responsibility to the cabinet, but the courts always play a role under the Child Welfare Act in doing that. You're stating what your position is. Well, I understand. You're stating a conclusion. So I do have a question that I'm curious about. There's no question that both the court and the cabinet are involved. Nobody would seemingly dispute that. But if this is a case where the cabinet thinks somebody should be placed someplace and the court doesn't agree, does the cabinet have the right to appeal that decision of the court? Your Honor, if you read the question and answer to the Child Welfare Manual about that very issue, question and answer three, it's 8.3a.12. Tell me yes or no. Yes, the cabinet could, if they disagreed, appeal it. Do they ever appeal? Not that I know of, no. So again, it seems to put more emphasis on the court as opposed to the cabinet. The responsibility for placement and care means that they're coming to court and making recommendations about placement and reporting on the progress and care and treatment at all times. But the final decision is the court. The court always makes the decision. That is what the law is. It's baked into the way the Child Welfare Act operates. You can't have it any other way. But they give the executive function, as Judge Petrie's testimony goes into, we always give due consideration to what the cabinet recommends on placement, on the care and treatment plan, and the statutes plainly give in 620.130 the authority to the cabinet to change care and treatment and placement plans. It gives them that authority. They always have that authority, but the court is always involved in that, and you can't take them out. That's the mistake that the trial court made, is that it somehow thought that the court not having further placement responsibility, actual placement capacity to make a change in placement after the cabinet gets custody, somehow means that the cabinet lost responsibility. That is not the law. I direct your attention, the best way to read this and understand it, and the role of both entities, and the role of this placement recommendation and care recommendations that the cabinet must always make to this court, that is right there in question and answer number 3, 8.3a.12. It explains it. Okay, great. Thank you, counsel. You'll have your rebuttal. We'll hear from the cabinet. May it please the court, Mr. McSwain, Mr. Daugherty. My name is Brent Ervin. I have the honor and privilege of representing the Commonwealth of Kentucky and Cabinet Secretary Eric Friedlander in this appeal. This court should affirm the district court opinion because the lower court properly applied, commonly understood principles of statutory construction and came to the right conclusion of what was Congress's intent when it placed these words in the Child Welfare Act. Now, both briefs cite several different cases, but they all agree on the principles of statutory construction. There's no debate between the parties on how a court applies principles of statutory construction. Before I get into those principles of statutory construction, I'll just note that there's two underlying constitutional bases for two of these principles. Number one is the separation of powers principle that Congress gets to decide what the law is, not a court. We cited in our brief the Gun Owners Association case. I know this court had en banc review. In the lower court opinion, whether that is overturned or not by the majority on en banc review, the principle was made that it is the work of the people's representatives in Congress to make the law. This court applies it. It doesn't amend it. It doesn't correct it. But Congress did not use the word custody in this provision. You're correct. The real case turns on the meaning of the words placement and care responsibility. You can ignore the word custody if one wants. What amount of oversight or executive action in trying to place a child must a state agency have for it to rise to the level of responsibility within the meaning of the statute? This may be a quick case of first impression because, to my knowledge, that hasn't been decided. But we would argue that the lower court got it right because Congress didn't define the term placement and care responsibility. You can look at what... I can think of ways. Your entire argument is they don't have responsibility because they don't have final decision making authority. But can't you think of other areas where the word responsibility is used in a way just to mean oversight or it's your job to do something even if you can get vetoed? If an employer gives an employee the responsibility to undertake this task with final approval coming from the employer, wouldn't it be quite natural to say that the employee has the responsibility to undertake the task even though there is the veto power? There may be other contexts where that is reasonable, but I'll get to my second point about there's a federalism concern here. And as the parties both agree, if Congress is going to pass a spending clause legislation and ask the state to waive its sovereign immunity, it must do so in such a clear fashion that the state knows what the bargain is. In other words, even though this is de novo review, I believe if Judge Van Tatenhoff's interpretation was so out of bounds, that would have also given the state clear notice that, hey, if you take this money, this glisten dollars, as one of the parties called it, if you take that money, that means you have an unlimited... Can we get back to what Judge Murphy was asking though? If I'm whispering to the judges here and the judge makes the decision, but everything I he took as gospel, and there's a state plan or there's some administrative things going on that tell me that I have some duties to help to recommend to whatever it is, at what point am I assuming responsibility even though the judge ultimately is the one who's mouthing the words or making the decision? My argument is just that if Congress had wanted a recommendation authority to be sufficient, it would have clearly said that in the statute. I disagree with their premise that... So then we're construing the word responsibility, right? And care, but mainly responsibility. Well, care, I mean, you wouldn't deny that you have care responsibility, would you? Even where the judge is making the placement decision? I mean, you're still involved to some extent, right? And care doesn't include... I mean, put that aside, okay? So placement. What do we... How do you read the word responsibility? We have to construe the word, and Judge Murphy, I think, makes a great point. Look, we talk about responsibility in a lot of different ways, and that would be evidence of what responsibility means, right? I mean, you can give a lower level or some other employee responsibility even if you're the ultimate decision maker, right? Your Honor, we think what Congress intended, and I will concede there could be different ways and different statutes, different employment contexts where responsibility might reasonably be applied in a different way, but when Congress wants to give state notice that you're going to be amenable to suit, it needs to do so clearly, and it didn't do so unless you insert the word recommendation or you modify the word placement responsibility. Because we all agree in Kentucky that Kentucky cabinet, and they get involved in different ways. You asked how does Kentucky get involved. Anyone can bring a petition alleging dependency, neglect, or abuse. Sometimes it's family members that are fighting in a custody case. Sometimes even judges in Kentucky ask the cabinet to do a background check and give a recommendation when there is no abuse. It's just a normal custody fight. So the cabinet can be involved and would be brought in. And they certainly would be involved if they were the one that initiated the dependency, neglect, and abuse case. And in any case, the first thing the cabinet does is try to look out for the best interest of the child, and they try to determine if the child can stay safely in the home. If it can, it does not go to court and ask for emergency removal. So in that subset of cases where they think the child needs to be removed from the home, the first thing they do is find out from the parent is there somebody that can care for the child. That is the least disruptive emotional impact on a child if he goes and lives with a family member or a friend instead of a stranger that's in foster care. But they're making the decision at that point that the child should be moved. Well, the cabinet has to make an initial decision. Is that by law? By state law, they have to do that? Yes, by state law. And that's placement responsibility, you think? No, no. I'm talking about whether they're even deciding whether to remove a child at all because Why is that not part of placement responsibility? Your Honor, You're moving, the initial decision to, I mean then at that point you're just drawing the line between, well we make the decision but then we throw up our hands and the judge does whatever the judge wants to do in terms of where the child is going to go. Let me make a concrete example. Suppose the house is messy but the child doesn't seem to be in danger. The social worker can offer services and doesn't think it meets the threshold to go to court and get an emergency custody removal. But if the parents are drug addicted and are harming the child, then the cabinet worker would normally go to the juvenile court and say this child is in danger. We meet the standard for emergency custody removal. We've asked the parent. The parent says the aunt or the grandmother can watch the child and we will do a background check if they have not got a criminal record, which we have to ask the state police to do, or if they are not on the dependency, neglect, or abuse register, normally that is where we would recommend the child go with that relative. If there is no body, because maybe it is somebody that has just moved to Kentucky and there is no family members that come forward, then the only other alternative is to go to court and ask that the child be put in state custody, which means then the cabinet either has to search and find a relative, maybe out of state, or, this is an important point, they go into a licensed foster care home where the foster parents have already gone through strict training on separation anxiety, special needs, whatever, and they repay them because they are providing that service for the state. Congress drew the line here, and there are reasons that we suggested why Congress would do that, that we argued before Judge Tatenhoff, it really ultimately doesn't matter why Congress drew the line here, but they drew the statute the way they did, with this placement and care responsibility, and with due respect, this is not some dodge that we came up with after the Gleason case, it was the natural progression of what happened. In Gleason, the court was looking at, had the child left the state's custody and gone back with permanent placement to the aunt, and in the Gleason case, the family court had signed what they call a bench note, which is just scribbling on the docket sheet, child goes to aunt. This court said, in Gleason, that the family court in Fayette County had not entered a certain government form, and that because they hadn't entered the government form, that was not form over substance, the cabinet still had custody of the child and continued to have to make payments for that child until the family court judge signed that certain form. So in this case, we're looking at the back end. It's unclear to me, reading Gleason, that there was actual custody. It talks about temporary replacement, and the parties seem to agree that there was custody, the court says custody, but it seems like it might be loose language. I don't know. It may have been loose language. It doesn't seem like there was a formal, or one of these situations where the court had placed the child in cabinet custody. Is that right? Well, Mr. Daugherty was the guardian ad litem in family court, and I would defer to his understanding because I picked the case up after we were arguing the test. But my understanding is there were two children. Let me ask you this question, because we're talking about lines and whether Congress would have thought this was a rational line or not, and I can't, for the life of me, figure out why this line between whether the judge orders the placement to the custody of the cabinet or just does a placement, whether there's a way station with the cabinet having custody, why does that line matter, or why does that make sense at all? Well, Your Honor, custody has mattered quite a bit in constitutional law and our duty to protect children, for one thing. I think that Congress was aware of those kinds of cases, and it drew the line. That just collapses back into this question of whether legal custody is the line, and I don't think that I'm with you on that, if you're still arguing that, because you can have placement responsibility without custody. Well, my argument is there may be a hypothetical situation where one could have placement responsibility and not custody, but in this case, applying Kentucky law, the cabinet only can make a recommendation to the judge, and that is a logical way to interpret the statute that the lower court did, and we think the lower court correctly interpreted the Congressional intent in this case, and if that did, then you don't have to look at all these secondary sources of statutory construction. I have a question just about the administrative agency decisions that you sent, or that were in your brief. I found those interesting because it was the states that were asking for the broad interpretation and not the narrow interpretation. I wonder how much DOV Glesson is actually affecting your view of what the statute should mean, so maybe if that case did not exist and there wasn't this private right of action, query whether states would want to be able to structure themselves in the way they see fit and still be able to get funding, because remember, this requirement that we're interpreting, it's a duty on the state, but it's also the way the state gets funding, and so you would think that the state would want to have flexibility in the way it gets funding, and so it should be able to structure itself with this kind of dichotomy you have now and still be able to get funding. Which way does the, I guess the bottom line from that answer is, why does the clear statement rule necessarily cut your way? Judge Murphy, I think it's a hand in glove argument. If Congress funded Kentucky, then we would not object to passing on the money we get from Congress to the parties, but since Congress is not funding it, you can't use the same language against the state in one instance and for the state in the other instance. To be logically consistent, you would have to say Congress didn't intend for Kentucky to get the money, and Kentucky therefore isn't obligated to pay it to the appellants in this case. I don't understand, has Congress not, have they stopped funding this program? They have funded it, but my understanding is they limit it to the kind of people that are not the appellants in this class. They limit it to the people that are in state custody, that's where we get the money and we spend it. We have a different pot of money that we spend on the appellants that come from state funds, TANF funds, it's just a different lower amount. If we ruled against you in this case, could you actually bring a claim against the federal government and say, the federal government, the federal agency is actually misinterpreting responsibility and therefore they should be providing these funds? Look, the Sixth Circuit just said it. Well, I suppose we could, but I think the cleaner thing would be for Congress to clean up the statute and define what they meant by this. We certainly think Congress should fund children's care, we just don't think it did it in this case with the specificity that would be required to give clear notice to Kentucky it was waiving its sovereign immunity. If it had done so, Judge Van Tatenhove wouldn't have reached the decision he did. He reached a logical, plain reading without extraneous referrals to the Children's Bureau or anything. That's the cleanest way for this Court to look at it, affirm the Court, Judge Van Tatenhove, because we think he did properly construe the meaning of placement and care responsibility. Mr. Dahl here and Mr. McSwain, of course, they're going to argue the difference, but words, you know, what did Congress mean? That is the nub of the case and we believe that Judge Van Tatenhove did correctly draw the line when a Court has the responsibility versus when an agency merely has the authority to make a recommendation. So that is our argument, unless the Court has any other questions, I see my time is up. Okay. Thank you, Counsel. Thank you, Your Honor. Thank you, Your Honors, thank you, Counsel. Your Honor, Congress has spelled out responsibility a broad general term. The State has no choice under the case law but to apply that. It cannot apply a more restrictive definition of what they think is correct. The way this Act works is that the State is required up front to give account of all the foster children and their care. I didn't know about what Counsel just stated there that apparently the State doesn't get paid for. If they don't get paid for these children, doesn't that at least suggest that the Federal Agency does not think that they're covered by this obligation? Because it's both an obligation on the State, but it's the way the State gets paid. So I think those two should be coextensive. The State has to give account of all of the children in its foster care as defined by the Federal Agency. Apparently the State is leaving out those who are counted in foster care pursuant to the State definition of foster care. That may be the fundamental error here, because if they're submitting to Congress or submitting to the HHS, this is our count, and our count, they don't tell them, is the way we define foster care, which includes custody. That may be the problem. That is the first time I've heard that statement, frankly. That is not in the record. That is just a statement from Counsel. But if that is the case, that then shows conclusively that the State is not counting them in accordance with the Federal definition of foster care, which is every child. Congress clearly intended in its definition of foster care to include any child that is in 24-hour substitute care after the judicial removal proceedings occur in accordance with the Child Welfare Act. 24-hour substitute care doesn't matter whether they're paid or not. That's the definition, and you can look at it in 1356.20, the Federal regulation and the definitions. That's also, by the way, that foster care regulation is, it may be actually 1320. I get the numbers mixed up, but it's in our brief. But that foster care regulatory definition has been approved by Congress in 42 U.S.C. to 290 BB. They adopted the regulatory definition as foster care. It was a different program, but they adopted it. It is clear that Congress knows what HHS expects for a uniform definition of foster care. The State can't have a varying definition of what foster care is. These children are in the Federal, meet every criteria of the Federal definition of foster care, and the Cabinet bears the placement and care responsibility precisely for the reason that Your Honor just raised the question. They have to make a recommendation. That is required. We cited in our 28J letter just the other day, and I don't know if you've had a chance to see that, but we cited a new case that just came down 10 days ago from the Kentucky Court of Appeals that confirms Judge Petrie's testimony that the Cabinet has a responsibility, and it would abrogate its responsibility if it doesn't make a recommendation on placement and take a position on placement as to what is the least restrictive placement of the child. I still struggle with whether that's responsibility. That judge makes the ultimate decision. Judges are reluctant to cede power, so I'm not sure he would say he didn't have responsibility. Whispering in someone's ear is not the same thing as putting your name on the line. Your Honor, I know that the Child Welfare Manual doesn't rank to what Congress's statutory text means, but I have no choice but to read you what I think is a clear statement in the Child Welfare Manual answering your specific question. This is question and answer three. Title IV-E requires, as a condition of eligibility, that the child's placement and care responsibility be vested with the Title IV-E agency. The purpose of the regulatory provision in the regulation 1356.21G3 is to assure that the authority of the Title IV-E agency with placement and care responsibility for the child is not usurped. A court-ordered placement, as prohibited in the rule, involves the court taking placement and care responsibility away from the agency and assuming placement and care responsibility by choosing the child's placement without bona fide consideration of the agency's recommendation regarding placement. It goes on then and ends with this sentence. Where is that? That is in Q&A 3. I understand that, but where do I get, where do I find that in Kentucky law, for example, where it would say the cabinet has, some kind of language, it wouldn't have to be responsibility, but setting forth that the cabinet has more responsibility than simply whispering in the ear of the judge. Your Honor, it's... That there's something, that they have some overall duty under Kentucky law to look out for the placement of the child. In this record, I would direct you to 98, record number 98, the deposition of Judge Petrie. I've cited it throughout, and I would also cite to you the VM decision that just came down in my Rule 28J letter. It confirms that. I'm looking for a KRS. I'm looking for a KAR. I read Judge Petrie's deposition. It's very interesting and informative, but a lot of it is kind of, this is the way our practice is. Judges would, this is how we do it, but I'm not sure that gets you there. Your Honor, KRS 620.130 subsection 3 has a statement that says the cabinet has the authority to change the child's treatment plan and placement as it sees fit. Let's paraphrase that, but it's the third sentence of 620.130 subsection 2, third sentence. I thought you told us earlier that they had to go back to the court to get that recommendation. The next sentence after that says they have to go back within 14 days. That would be for a child that's in their custody, but that statute is applicable to all children. It nowhere uses the definition of foster child as state law defines it. It nowhere uses the qualifier of committed to cabinet custody or anything like that. I want to end, Your Honor, with this statement. The federal statute nowhere contains custody as a requirement. Congress knows how to require specific judicial determinations. It has done so throughout the Child Welfare Act, including in its definition of legal guardianship where it talks about custody is given to the guardian as a judicially created relationship. It does not say that with respect to this eligibility requirement. The last thing I would say is the rule of construction in section 678 of the Child Welfare Act. It says that nowhere do we intend to infringe on the discretion of courts to make orders that protect the health and safety of the child. In this instance, Your Honor, to require state custody to be a judicial order in order to get foster care maintenance payment, it would trounce on the juvenile court's authority to make orders for the safety and health of the child. Thank you, Counsel. I appreciate the arguments in the case. The case will be sued. With that, I think we can adjourn court.